IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL TYRONE EDMOND     PLAINTIFF

v.     NO. 4:20-cv-00857 PSH

ANDREW SAUL, Commissioner of     DEFENDANT
the Social Security Administration

## MEMORANDUM OPINION AND ORDER

In this case, plaintiff Michael Tyrone Edmond ("Edmond") maintains that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] Edmond so maintains for one reason. It is Edmond's contention that he must constantly elevate his left leg to reduce swelling, and the ALJ erred when he discounted Edmond's need to do so.

---

[1] The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." See Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) [quoting Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)].

Edmond was born on November 18, 1971, and was forty-four years old on April 16, 2016, the amended alleged onset date. In his applications for disability insurance benefits and supplemental security income payments, he alleged that he is disabled because of a left leg impairment.

The parties did not exhaustively summarize the evidence in the record but merely noted the evidence relevant to the one issue in this case. The Court appreciates the brevity of the parties' briefs and recounts the relevant evidence only to provide a context for addressing the one issue.

The record reflects that Edmond has complained of pain and numbness in his left ankle and foot since at least November of 2015. See Transcript at 490. When asked during the administrative hearing how he might have injured his ankle and foot, he testified that he had no idea. See Transcript at 37.

On January 19, 2017, Edmond saw Dr. Gregory Ardoin, M.D., ("Ardoin") for the pain and numbness in Edmond's left foot and ankle. See Transcript at 815-818. Edmond described the pain as an aching, piercing, sharp, throbbing pain exacerbated by, inter alia, movement. He was sixty-seven inches tall and weighed 245 pounds. An examination revealed that he had 5/5 motor strength of all muscle groups surrounding his foot and ankle and a full range of motion; however, there was tenderness upon

palpation over the talus, and "2+ Dorsalis Pedis and Posterior Tibial, Intact to light touch of the foot and ankle." See Transcript at 818. He also had an antalgic gait. An x-ray revealed an "irregular shaped talar head with osteophyte formation and some bony destruction of the talar head," "joint space narrowing of the subtalar joint posterior face," and "irregularity of the medial cortico surface of talus." See Transcript at 818. Ardoin assessed possible talus avascular necrosis, prescribed Tylenol, and ordered testing.

Edmond saw Ardoin again on January 30, 2017. See Transcript at 490-491. Edmond reported continued pain in his left ankle and foot. The results of an examination mirrored the results of the earlier examination. An MRI revealed "comminuted intra-articular healing fracture of neck of talus extending into talar head," an avascular necrosis of the talar head, and "secondary talonavicular joint arthritis." See Transcript at 491. A CT scan revealed an avascular necrosis of the talus. Medication and a brace were prescribed, and Edmond was referred to pain management.

Edmond saw Ardoin next on April 24, 2017. See Transcript at 487-489. The results of an examination largely mirrored the results of the previous examinations. Although Edmond's gait was normal, there was tenderness upon palpation over the talonavicular joint, ankle joint, and subtalar joint of his left lower extremity. An x-ray revealed "increased radial density of

the talus including the body and head with collapse of the talar head with a small fragment on the dorsal talar head consistent with avascular necrosis and metatarsus adductus." See Transcript at 488. Ardoin assessed left talar avascular necrosis, prescribed Norco, and recommended continued use of a brace.

Edmond returned to Ardoin on August 21, 2017. See Transcript at 786-787. Edmond reported constant pain and swelling in his left ankle and foot. The results of an examination mirrored the results of the earlier examinations. He had an antalgic gait, a stiff range of motion, and moderate swelling in his left ankle and foot. Ardoin noted that Edmond had failed conservative treatment, and Edmond desired to proceed with surgery.

On December 18, 2017, a consultative examiner performed a general physical examination of Edmond. See Transcript at 439-443. The examiner observed some edema in Edmond's left ankle, diagnosed left ankle pain, and opined that Edmond had a severe disability in walking due to the pain.

On December 20, 2017, a state agency physician opined that Edmond could, inter alia, stand and/or walk for two hours in an eight-hour day, sit for about six hours in an eight-hour day, and occasionally climb and

balance. See Transcript at 71. A second state agency physician subsequently concurred with the opinions. See Transcript at 96-97.

On January 31, 2018, Edmond underwent surgery. See Transcript at 598-600. Ardoin described the surgery as a "left ankle fusion, subtalar fusion, syndesmosis fusion and talectomy." See Transcript at 481.

Edmond saw Ardoin again on February 12, 2018. See Transcript at 481-482. Ardoin noted that although Edmond's left ankle problem had been severe, he was doing well as he reported only occasional tingling and pain.

On March 26, 2018, Edmond saw an Advanced Practice Registered Nurse ("APRN") in Ardoin's office. See Transcript at 479-480. The APRN observed that Edmond had moderate edema and a stiff range of motion in his left ankle and foot but was otherwise healing from the surgery.

Edmond continued to see Ardoin in 2018.[2] On August 6, 2018, Ardoin observed that Edmond had some pain with activity but otherwise had full strength in his left ankle and foot and an improved gait. A note from August 18, 2018, provides the following: "... per Dr. Ardoin, pt is released to work. There is nothing in his notes stating that he can't work." See Transcript at 689. On November 5, 2018, Edmond reported that his pain had "gotten

---

[2] See Transcript at 757-758 (04/23/2018), 792-793 (06/04/2018), 722-723 (08/06/2018), 736-737 (11/05/2018).

significantly better." See Transcript at 736. Ardoin observed that Edmond's condition had improved, but his ankle would never be normal.

Edmond also underwent medical testing following his surgery. A March 26, 2018, x-ray of his left ankle showed good alignment. See Transcript at 478. A November 5, 2018, x-ray of his left ankle and foot showed "some joint space of the talonavicular joint," and "[t]he hindfoot fusion appear[ed] to be well consolidated and healed without evidence of graft collapse and failure." See Transcript at 728.

Between what appears to have been June 12, 2018, and September 10, 2018, Edmond received physical therapy for his left ankle and foot problems.[3] The progress notes reflect that Edmond tolerated the therapy well. The September 10, 2018, discharge summary reflects that his condition improved as a result of the therapy. See Transcript at 711-712. The discharge summary also reflects that although he had been reluctant to ride his motorcycle because of the difficulties posed by dismounting at lights and backing up in parking lots, he was planning to ride his motorcycle

---

[3] See Transcript at 776-779 (06/12/2018), 759-760 (06/14/2018), 805-806 (06/19/2018), 789-790 (06/21/2018), 744-745 (06/26/2018), 705-706 (07/06/2018), 720-721 (07/10/2018), 695-696 (07/12/2018), 692-693 (07/13/2018), 701-702 (07/17/2018), 724-725 (07/19/2018), 699-700 (07/20/2018), 707-708 (07/24/2018), 690-691 (07/26/2018), 718-719 (07/27/2018), 714-715 (07/31/2018), 739-740 (08/02/2018), 741-742 (08/03/2018), 709-710 (08/07/2018), 726-727 (08/09/2018), 729-730 (08/10/2018), 697-698 (08/16/2018), 716-717 (08/23/2018), 734-735 (08/30/2018), 711-712 (09/10/2018).

that very day. The discharge summary does note, however, that he had an abnormal gait and some stiffness and effusion in his left ankle.

Between what appears to have been October 15, 2018, and March 15, 2019, Edmond also received pain management.[4] The progress notes reflect that his pain medication included Tylenol 3, Meloxicam, and Norco, and he reported receiving benefit from the medication. He nevertheless continued to complain of chronic left ankle pain and reported having difficulty standing and walking for long periods of time.

Edmond completed a series of documents in connection with his applications. See Transcript at 289-298, 308-317. In the documents he completed on March 13, 2018, he represented that he experiences constant pain in his left ankle. The pain is made worse by activities that include standing and walking, and he must use an assistive device to stand and walk. He has difficulty attending to his personal care and cannot perform any meaningful house or yard work, but he can shop for groceries, sit and visit with friends, and watch television. He estimated that he can walk about twenty-five to thirty feet before he must stop to rest.

---

[4] See Transcript at 621-622 (10/15/2018), 620 (11/29/2018), 618 (12/18/2018), 617 (03/15/2019).

The record contains a summary of Edmond's work history. See Transcript at 250-257. His work history is good, particularly between 2005 and 2015.

Edmond testified during the administrative hearing. See Transcript at 34-54. He worked until April of 2016 when he was "released" from his job duties for what his boss said was "insubordination." See Transcript at 35. Edmond was not working in 2018, and he could not explain why a call log from Ardoin's office dated August 16, 2018, reflects that Edmond was "released to work" and "[t]here is nothing in his notes stating that he can't work." When asked whether Ardoin had imposed any physical restrictions, Edmond testified as follows:

> As far as walking, yes. He said I need assistance in walking. I can't walk more than 50 feet without having to use some kind of assistance, or stopping for rest. I mean he told [me to] just sit—I don't know why he didn't write that down. He told me, you know, rest and try to keep my leg propped up to keep it from swelling.

See Transcript at 39. The last time Edmond rode his motorcycle was in 2017. He cannot perform a job that requires him to sit as his left leg is constantly hurting. He must keep his leg propped up to at least the level of his waist so that he can "keep the swelling down." See Transcript at 42.

When his leg swells, it becomes stiff and painful. He cannot be on his feet for more than about ten minutes. When he is able to move about, he uses assistive devices in the form of a knee scooter, cane, and walker.

The ALJ found at step two of the sequential evaluation process that Edmond has severe impairments in the form of left ankle trauma, status post left ankle fusion, and obesity. The ALJ assessed Edmond's residual functional capacity and found that Edmond is capable of performing sedentary work with the following additional physical limitations: "occasional stooping, crouching, bending, kneeling, crawling, balancing and occasional use of stairs; ... and has the option to use a cane in one of the upper extremities for ambulation." See Transcript at 13. As a part of so finding, the ALJ found Edmond's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. Specifically, the ALJ found as follows:

> ... [Edmond] testified that he constantly props his legs up to reduce the swelling, however, the record shows no significant edema. ... Furthermore, the record does not contain any opinion or statement from [his] medical providers indicating that [he] needs to elevate his legs constantly as he testified. [He] testified that the swelling in the legs causes immobility because the leg stiffens with the swelling. However, physical therapy notes indicate that [Edmond] was planning to ride his Harley-Davidson motorcycle the date of the appointment in September 2018, which requires dismounting at traffic lights

> and backing into parking lots ... Moreover, the record shows that [he] was released to work in August 2018, meaning that [he] was medically able to resume work ... A November 2018 treatment note stated that [he] was much improved but still had a mildly antalgic gait, which is inconsistent with [his] testimony that his edema leads to immobility ...

See Transcript at 15. The ALJ found at step four that Edmond is unable to perform his past work. At step five, the ALJ relied upon the testimony of a vocational expert and found that there is work available for a hypothetical individual with Edmond's limitations and residual functional capacity.

Edmond maintains that "[t]he [ALJ] erred in discounting and disregarding [Edmond's] complaint that he has to elevate his feet to avoid swelling." See Docket Entry 16 at CM/ECF 7. It is Edmond's contention that the ALJ failed to follow Social Security Ruling 16-3p, and "there is no objective medical evidence that [Edmond] did not need to elevate his feet to avoid swelling." See Docket Entry 16 at CM/ECF 8.

As a part of assessing the claimant's residual functional capacity, the ALJ is required to evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of her pain or other symptoms. See Social Security Ruling 16-3p. In

evaluating the intensity, persistence, and limiting effects of the claimant's pain or other symptoms, the ALJ must consider all the evidence, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p. See also 20 CFR 404.1529; Polaski v. Heckler, 751 F.3d 943 (8th Cir. 1984) (identifying factors substantially similar to those of Social Security Ruling 16-3p).

The ALJ noted his obligation to consider the consistency of Edmond's symptoms pursuant to Social Security Ruling 16-3p. The ALJ considered Edmond's allegation that he must constantly elevate his legs to reduce swelling. The ALJ found that although Edmond's medically determinable impairments could reasonably be expected to cause the symptoms, Edmond's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the evidence in the

record. The ALJ could find as he did as his findings are supported by substantial evidence on the record as a whole. The Court so finds for the following reasons.

First, the ALJ adequately considered the medical evidence relevant to Edmond's alleged need to constantly elevate his left leg to reduce swelling.[5] The ALJ did so, in part, by noting that the record contains no evidence of "significant edema." See Transcript at 15. For instance, Ardoin saw Edmond on numerous occasions throughout 2017 and 2018. It appears that Ardoin observed swelling in Edmond's left ankle and foot on only two occasions, the first occasion being before his left ankle surgery and the second occasion being after the surgery. On the first occasion, Ardoin characterized the swelling as "moderate." See Transcript at 786. On the second occasion, Ardoin characterized the swelling as "minimal." See Transcript at 793. On December 18, 2017, or approximately six weeks before the surgery, a consultative examiner observed edema in Edmond's left ankle and foot but characterized the edema as "1-2+." See Transcript at 443. On March 26, 2018, or approximately two months after the surgery,

---

[5]    Edmond maintains that he must elevate his legs to keep them from swelling. There is nothing to suggest that any part of his right leg is impaired. Thus, his alleged need to constantly elevate his legs is limited to his left leg only.

12

an APRN observed edema in Edmond's left ankle and foot but characterized the edema as "moderate." See Transcript at 479.[6]

The ALJ adequately considered the medical evidence, in part, by noting that no medical provider specifically advised Edmond to constantly elevate his left leg to prevent swelling. Although Edmond testified that he was encouraged to do so, he acknowledged that the record contains no such restriction.

The other medical evidence in the record also supports the ALJ's finding that Edmond is not required to constantly elevate his left leg to reduce swelling. Prior to Edmond's left ankle surgery, he complained of pain and numbness in his left ankle and foot, a complaint his medical providers accepted and attempted to treat. The providers did not, however, offer an assessment of his ability to perform work-related activities. The only assessments of his work-related abilities prior to the surgery were offered by two state agency physicians. They agreed that he could, inter alia, sit for about six hours in an eight-hour workday.

---

[6] The progress notes from Edmond's physical therapy reflect that he had diffuse swelling on multiple occasions, but the notes provide no insight into how significant the swelling was.

After Edmond's left ankle surgery, Ardoin's progress notes and the progress notes from Edmond's physical therapy reflect that his condition improved. Ardoin observed on August 6, 2018, that Edmond had some pain with activity but otherwise had full strength in his left ankle and foot and an improved gait. In addition, a note from August 18, 2018, provides the following: "... per Dr. Ardoin, pt is released to work. There is nothing in his notes stating that he can't work." See Transcript at 689. Edmond could not explain the note but points out that he was not working in or around August of 2018. The ALJ could and did consider the note, and the Court is not prepared to find that he accorded it unnecessary importance. By November 5, 2018, Edmond reported that his pain had "gotten significantly better." See Transcript at 736.

Edmond maintains that there is "no objective medical evidence that [he] did not need to elevate his feet to avoid swelling." See Docket Entry 16 at CM/ECF 8. He is correct, but it is of little consequence. While Edmond may derive some benefit from elevating his left leg, the ALJ could find that a medical provider never recommended Edmond do so.

Second, the ALJ adequately considered the non-medical evidence relevant to Edmond's need to elevate his left leg to prevent it from swelling. The ALJ did so by noting that Edmond had ridden his motorcycle

as late as 2017, or well past the alleged onset date of April 16, 2016.[7] On September 10, 2018, or after Edmond's surgery and a period of physical therapy, he indicated that he was planning to ride his motorcycle again that very day.

The other non-medical evidence in the record also supports the ALJ's finding that Edmond is not required to constantly elevate his left leg to reduce swelling. Although he has difficulty attending to his personal care and cannot perform any meaningful house or yard work, he can shop for groceries, sit and visit with friends, and watch television. The progress notes from his pain management reflect that his medication included Tylenol 3, Meloxicam, and Norco, and he reported receiving benefit from the medication.

The question at bar is whether the ALJ's findings are supported by substantial evidence on the record as a whole. It is not the role of the court to "re-weigh the evidence." See Guilliams v. Barnhart, 393 F.3d 798 (8th Cir. 2005). Here, the ALJ could find as he did with respect to Edmond's residual functional capacity and his alleged need to elevate his left leg to prevent swelling. Specifically, the ALJ could discount Edmond's allegation,

---

[7] The Court accepts the ALJ's observation that riding a motorcycle requires "dismounting at traffic lights and backing into parking lots," see Transcript at 15, activities that require the use of both ankles and feet.

not include it in assessing his residual functional capacity, and not incorporate the allegation into the hypothetical question.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Edmond's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 8th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE